IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TERRY E., | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 19-cv-05722 |
| v. | ) |
| | ) Judge Andrea R. Wood |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Terry E. seeks review of the final decision of the Commissioner of Social Security ("Commissioner")[1] denying his application for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 423, 1381–1383f. Specifically, Plaintiff claims that the Administrative Law Judge ("ALJ") who denied his application erred in finding that he is not disabled within the meaning of the statute and thus asks the Court to reverse that decision and remand his case for appropriate proceedings. The Commissioner, in turn, asks this Court to affirm the ALJ's decision. For the reasons that follow, the Court finds that the ALJ's decision is supported by substantial evidence and is therefore affirmed.

## BACKGROUND

Plaintiff filed the underlying application for disability benefits and supplemental security income on January 3, 2017. (Admin. R. ("A.R.") at 13, Dkt. No. 6-1.) He claims he is disabled based on his diagnoses for gout, osteoarthritis, and obesity. (*Id.* at 16.) Plaintiff claims that his

---

[1] This case was filed when Andrew Saul held the position of Commissioner. Kilolo Kijakazi has been substituted as the proper Defendant pursuant to Federal Rule of Civil Procedure 25(d).

medical conditions have prevented him from engaging in enough work activity to meet the criteria of a substantial gainful activity since his alleged disability onset date of May 28, 2016. (*Id.* at 13, 16, 18, 35–38.)

Plaintiff was born on January 8, 1973, and he was 43 years old on his alleged disability onset date. (*Id.* at 22.) While Plaintiff's weight has fluctuated, his body mass index, at times, has placed him in the obese category. (*See, e.g.*, *id.* at 305, 438.) Plaintiff had been diagnosed and treated for gout long before his alleged disability onset date. (*Id.* at 18.) In addition, X-rays from 2015 revealed that Plaintiff had a fragmented spur and joint effusion in his right elbow and mild degenerative changes and small joint effusion in both his knees. (*Id.* at 380.) Plaintiff filed an earlier application for disability benefits and supplemental security income on September 4, 2013. (*Id.* at 13.) Following a hearing, an ALJ denied that application on May 27, 2016, finding that while Plaintiff's gout and obesity constituted severe impairments, he nonetheless remained capable of performing the full range of work at the medium exertional level. (*Id.* at 13, 18, 104–14.) Several months later, Plaintiff filed the application at issue here, claiming that he has been unable to work since the day following the denial of his previous application. (*Id.* at 13.)

On November 18, 2016, Plaintiff visited his primary care provider, Dr. Robert Watkins, for a routine examination. (*Id.* at 41, 318–20.) That examination revealed no abnormalities other than high blood pressure. (*Id.* at 319–20.) During another examination about a month later, however, Dr. Watkins observed that Plaintiff was suffering from muscle aches, pain localized to one or more joints, and joint stiffness localized to one or more joints. (*Id.* at 324.) Plaintiff underwent a consultative examination on April 1, 2017 with Dr. Aisien Efesomwan. (*Id.* at 325–28.) Dr. Efesomwan noted that Plaintiff reported a history of gout that caused painful, tender, and swollen joints, mainly in his elbows, wrists, knees, and ankles, with flares occurring about two

2

times a week. (*Id.* at 325.) His examination revealed that Plaintiff was unable to squat but could stand on each foot alone. (*Id.* at 326.) Further, Plaintiff was able to get on and off the exam table with no difficulty and could walk more than 50 feet without support. (*Id.* at 327.) Dr. Efesomwan also observed that Plaintiff had normal grip strength in both hands and had normal ability to grasp and manipulate objects. (*Id.*) Finally, Dr. Efesomwan noted that Plaintiff had normal range of motion in his shoulders, elbows, wrists, hips, knees, ankles, and cervical spine, but had mildly reduced range of motion in his lumbar spine. (*Id.*) Later in April 2017, a state-agency doctor examined Plaintiff and concluded that he did not have any severe medically determinable impairments that would limit his ability to work. (*Id.* at 72.) A second state-agency doctor affirmed that assessment in June 2017. (*Id.* at 87–88.)

On July 24, 2017, Plaintiff visited Dr. Watkins complaining of swelling in his feet and hands caused by his gout. (*Id.* at 336.) Dr. Watkins observed that Plaintiff had mild edema in both of his lower extremities. (*Id.* at 337.) The bilateral mild edema remained present when Dr. Watkins examined Plaintiff again on November 15, 2017. (*Id.* at 346.) During an examination on December 11, 2017, Dr. Watkins noted that Plaintiff had limited range of motion in both knees and diagnosed him with an acute gout flareup. (*Id.* at 355.)

Plaintiff reported to Dr. Watkins again on February 21, 2018, complaining of pain and swelling in the middle finger of his right hand. (*Id.* at 357.) Dr. Watkins performed a physical examination, found that Plaintiff's right hand was swollen, and specifically observed swelling and inflammation in the index and middle fingers of his right hand as well as a small abscess on his middle finger. (*Id.* at 358.) Plaintiff was unable to make a fist due to the swelling and pain in his right hand. (*Id.*) Dr. Watkins further noted that Plaintiff had some slight swelling of his left elbow. (*Id.*) At the end of the visit, Dr. Watkins referred Plaintiff to an emergency room for X-rays and

possible drainage of the abscess on his right middle finger. (*Id.* at 359.) Accordingly, Plaintiff was admitted to a hospital that same day. (*Id.* at 393.) There, an X-ray of Plaintiff's right hand revealed severe degenerative changes at the radiocarpal and ulnocarpal joints and soft tissue swelling. (*Id.* at 395–96.) A February 23, 2018 discharge report noted that Plaintiff received vancomycin therapy and underwent a bedside incision and drainage procedure with respect to the abscess on his right hand. (*Id.* at 398.) He was also prescribed an antibiotic on discharge. (*Id.*) Ultimately, the cause of the pain in Plaintiff's right hand was determined to be cellulitis and not related to his gout. (*Id.* at 397, 402, 406, 439.)

One day after his discharge from the hospital, Plaintiff had a follow-up visit with Dr. Watkins. (*Id.* at 437–39.) A physical examination revealed that Plaintiff's bones and joints were within normal limits and there was some slight swelling in his left elbow. (*Id.* at 439.) About two weeks later, Dr. Watkins performed another examination, finding that Plaintiff had pain localized to joints in his left arm and feet. (*Id.* at 440.) During a March 10, 2018 examination, Dr. Watkins noted some scar and scab formation on Plaintiff's right hand and fingers, but otherwise found that Plaintiff had good range of motion in his fingers and hand. (*Id.* at 444.) Dr. Watkins's examination on March 24, 2018 yielded similar results, although he did also note that Plaintiff's right hand was swollen and causing pain. (*Id.* at 447–48.)

Plaintiff's present application for disability benefits and supplemental security income was first denied on April 26, 2017 and denied again on reconsideration on June 19, 2017. (*Id.* at 13.) A hearing was then held before an ALJ on April 4, 2018. (*Id.*) During the hearing, the ALJ heard testimony from a vocational expert about the availability of jobs to a hypothetical individual who retained Plaintiff's residual functional capacity ("RFC"). (*Id.* at 63–68.) The vocational expert testified that a hypothetical individual with Plaintiff's RFC could not perform Plaintiff's past

4

relevant work but nonetheless could perform the jobs of packer, assembler, and sorter. (*Id.* at 65.) However, when the ALJ asked if there would be jobs for the same hypothetical individual if he had to be absent two workdays each month, the vocational expert testified that no jobs would be available. (*Id.* at 66.)

After the hearing, the ALJ issued a written decision finding that Plaintiff was not disabled prior to the date of her decision, September 27, 2018. (*Id.* at 23.) While the ALJ found that Plaintiff had severe impairments as the result of gout, osteoarthritis, and obesity,[2] she nonetheless ruled that he had the RFC to perform light work, except that he could never climb ladders, ropes, or scaffolds; could occasionally climb ramps or stairs; could occasionally kneel, crouch, and crawl; and could frequently handle and finger with his upper extremities but only bilaterally. (*Id.* at 17.) In determining Plaintiff's RFC, the ALJ gave little weight to the opinions of two state-agency doctors who concluded that Plaintiff's ability to work was not limited whatsoever. (*Id.* at 20–21.) Although the ALJ found that Plaintiff's RFC precluded him from performing any past relevant work, she nonetheless concluded that there were still jobs existing in significant numbers in the national economy available to someone with Plaintiff's age, education, work experience, and RFC. (*Id.* at 22.) In particular, citing the vocational expert's testimony, the ALJ identified packer, assembler, and sorter as jobs available to Plaintiff. (*Id.*) Consequently, the ALJ concluded that Plaintiff was "not disabled." (*Id.*)

---

[2] While the ALJ recognized that Plaintiff also had hypertension, she found that it was well-controlled with medication and that there was no indication that Plaintiff's hypertension caused any limitations in his ability to perform basic work activities. (A.R. at 16.) In addition, the ALJ noted that Plaintiff alleged disability based on rheumatoid arthritis, but there was no indication in the medical record of such a diagnosis by an acceptable medical source nor was there medical evidence supporting such a diagnosis. (*Id.*) Plaintiff does not challenge either of these determinations here.

**DISCUSSION**

A federal court reviews "an ALJ's disability determination deferentially." *Weatherbee v. Astrue*, 649 F.3d 565, 568 (7th Cir. 2011). Its review is confined to the rationales offered by the ALJ and the court asks only whether the decision is supported by substantial evidence. *Shauger v. Astrue*, 675 F.3d 690, 695–96 (7th Cir. 2012). "Evidence is substantial when it is sufficient for a reasonable person to conclude that the evidence supports the decision." *Sims v. Barnhart*, 309 F.3d 424, 428 (7th Cir. 2002). The reviewing court's job is not to "reweigh the evidence or substitute [its] own judgment for that of the Commissioner." *Id.* Still, where the ALJ denies benefits, her decision must "build an accurate and logical bridge from the evidence to her conclusion." *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). On the other hand, remand is warranted when an ALJ's decision contains a legal error. *Pugh v. Bowen*, 870 F.2d 1271, 1274 (7th Cir. 1989).

To determine whether a claimant is disabled, the ALJ employs a five-step sequential evaluation process. 20 C.F.R. § 404.1520(a)(4). That process requires the ALJ to ask, in the following order: (1) whether the claimant is not currently engaged in substantial gainful activity; (2) whether the claimant has a severe medically determinable physical or mental impairment; (3) whether the impairment meets the criteria of any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) whether the claimant's RFC renders him unable to perform his past relevant work; and (5) whether the claimant's RFC, age, education, and work experience make him unable to adjust to other work existing in significant numbers in the national economy. *Id.* "A negative conclusion at any step (except for step three) precludes a finding of disability. An affirmative answer at steps one, two, or four leads to the next step. An affirmative answer at steps three or five results in a finding of disability." *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386,

389 (7th Cir. 1992). Plaintiff's challenge to the ALJ's decision focuses on her assessment of his RFC, which led her to render a finding of "not disabled" at step five of the sequential evaluation process. Relatedly, Plaintiff contends that the ALJ employed the incorrect standard to evaluate his subjective symptom statements, thereby tainting her assessment of his RFC.

    I.      RFC

Prior to proceeding to the fourth and fifth steps, an ALJ must first assess a claimant's RFC. *Varga v. Colvin*, 794 F.3d 809, 812 (7th Cir. 2015). RFC refers to the most work-related activities a claimant can perform despite their limitations and is to be assessed based on all the relevant evidence in the record. 20 C.F.R. § 404.1545(a)(1). The ALJ's "RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e.g.*, laboratory findings) and nonmedical evidence (*e.g.*, daily activities, observations)." SSR 96-8p. Further, "an ALJ must articulate in a rational manner the reasons for [her] assessment of a claimant's [RFC], and in reviewing that determination a court must confine itself to the reasons supplied by the ALJ." *Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009). Again, "the ALJ [herself] must connect the evidence to the conclusion through an accurate and logical bridge." *Id.* (internal quotation marks omitted).

Here, the ALJ found that Plaintiff had the RFC to perform a limited range of light work. Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). It also includes jobs that require "a good deal of walking or standing" and those that involve "sitting most of the time with some pushing and pulling of arm or leg controls." *Id.* Accounting for Plaintiff's severe medically determinable impairments, the ALJ determined that Plaintiff could perform light work subject to certain postural and environmental limitations. At step five, the ALJ concluded that there were

7

jobs that existed in significant numbers in the national economy that a person in Plaintiff's position could perform.

Plaintiff contends that the ALJ lacked sufficient medical evidence to support her assessment of the totality of his limitations. Specifically, he argues that the ALJ created an evidentiary deficit when she accorded little weight to the state-agency doctors' opinions that Plaintiff did not suffer from a severe medically determinable impairment. Absent that medical support, Plaintiff asserts that the ALJ impermissibly relied on her own lay interpretation of the medical evidence to assess Plaintiff's functional limitations.

The Court disagrees that the ALJ impermissibly relied on her lay interpretation of the evidence. As a starting point in her analysis, the ALJ observed that the ALJ who rejected Plaintiff's first application (one day before the alleged disability onset date here) found that he could perform the full range of medium work despite his severe impairments, citing the opinions of two state-agency doctors and a medical expert. (A.R. at 18, 111–12.); *cf. Laggner v. Comm'r of Soc. Sec.*, No. 1:14-cv-00272-SLC, 2016 WL 1237882, at *14 (N.D. Ind. Mar. 30, 2016) ("[A]n ALJ is entitled to consider evidence from a prior denial for the limited purpose of reviewing the preliminary facts or cumulative medical history necessary to determine whether the claimant was disabled at the time of his second application."). Then, the ALJ reviewed the medical evidence post-dating that prior denial (*i.e.*, the alleged disability onset date) and determined that they supported additional limitations to Plaintiff's RFC. In particular, she noted that the medical evidence concerning Plaintiff's gout flares, considered in conjunction with his osteoarthritis and obesity, warranted limiting Plaintiff to certain light work. (A.R. at 20–21.) At the same time, she declined to limit his RFC any further because she found that Plaintiff's subjective statements concerning the extent of his limitations were not supported by the record. Thus, the ALJ met her

8

obligation to "articulate at some minimal level her analysis of the evidence" in reaching her RFC assessment. *Zurawski*, 245 F.3d at 888. Indeed, the ALJ's rejection of the state-agency doctors' opinions that Plaintiff had no limitations and her finding that Plaintiff's RFC was even more limited than the one found by the ALJ who denied his first application suggests that she fully accounted for Plaintiff's medical evidence and subjective allegations. *See Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) ("This [RFC] finding was more limiting than that of any state agency doctor or psychologist, illustrating reasoned consideration given to the evidence [the plaintiff] presented."); *Dampeer v. Astrue*, 826 F. Supp. 2d 1073, 1085 (N.D. Ill. 2011) (finding that the ALJ arrived at an RFC supported by substantial evidence where she "accepted alternate medical evidence and incorporated several additional limitations to give Claimant's subjective assessments the benefit of the doubt").

      Notably, Plaintiff points to no doctor's opinion ascribing greater limitations to Plaintiff than those found by the ALJ. *See Rice v. Barnhart*, 384 F.3d 363, 370 (7th Cir. 2004) (finding that the ALJ's RFC determination was not in error where there was "no doctor's opinion contained in the record which indicated greater limitations than those found by the ALJ"). Nor is this a case where the ALJ completely disregarded evidence that conflicted with her conclusion. *See Jones v. Astrue*, 623 F.3d 1155, 1162 (7th Cir. 2010) ("The ALJ need not . . . discuss every piece of evidence in the record and is prohibited only from ignoring an entire line of evidence that supports a finding of disability."). Yet Plaintiff faults the ALJ for failing to consider how the evidence demonstrated that he could perform any of the requirements of light work. While Plaintiff correctly notes that SSR 96-8p requires the ALJ to "describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record," that does not mean that she must provide a "detailed function-by-function analysis."

9

*Lewis v. Astrue*, 518 F. Supp. 2d 1031, 1043 (N.D. Ill. 2007). "Only if the ALJ found that [Plaintiff's] ability to sit, stand, or walk was compromised would the burden of discussion fall on the ALJ." *Id.* And even upon a finding of such a functional limitation, SSR 96-8p does not require the ALJ "to make explicit findings as to precisely how long [a claimant] could stand or sit during an eight-hour period." *Corder v. Barnhart*, No. 03 C 9308, 2004 WL 1381125, at *5 (N.D. Ill. May 10, 2004). Accordingly, the ALJ's analysis properly considered that because Plaintiff's gout flares predominantly affected his hands, he could do no more lifting than required by light work and further limited him to bilateral frequent handling and fingering activities. (A.R. at 21.) On the other hand, the ALJ took note of the medical evidence showing intermittent mild edema in Plaintiff's lower extremities but accounted for medical records showing that the conditions did not impair his ability to walk and that he retained normal motor strength and sensation in his lower extremities. She therefore reasonably concluded that Plaintiff's conditions did not support his claimed limitations in walking, standing, and sitting.

Finally, given the substantial evidence supporting her RFC assessment, there is no merit to Plaintiff's assertion the ALJ should have called a medical expert to divine further limitations from the record evidence. Rather, it was Plaintiff's burden to prove he was disabled and to present medical evidence linking his disability to his claimed work limitations. *Castile v. Astrue*, 617 F.3d 923, 927 (7th Cir. 2010); *see also Binion v. Shalala*, 13 F.3d 243, 246 (7th Cir. 1994) ("Mere conjecture or speculation that additional evidence might have been obtained in the case is insufficient to warrant a remand."). "The hypothetical possibility that certain impairments could lead to certain functional limitations . . . is insufficient to disturb the ALJ's conclusions, where evidence of those functional limitations was not offered to the Commissioner or on appeal before

10

this Court." *Charmaine R. v. Saul*, No. 18 C 7955, 2021 WL 83737, at *4 (N.D. Ill. Jan. 11, 2021).

Next, Plaintiff claims that the ALJ erred by failing to consider the combined effects of his medically determinable impairments. In particular, he argues that she did not account for how his obesity aggravated his gout and osteoarthritis. Plaintiff is correct that "an ALJ must consider the combined effects of all of the claimant's impairments, even those that would not be considered severe in isolation." *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009). However, the ALJ expressly recognized that "[o]besity may have an adverse impact upon co-existing impairments," noting that "[s]omeone with obesity and arthritis . . . may have more pain and limitation than might be expected from arthritis alone" and that "obesity may limit an individual's ability to sustain activity on a regular and continuing basis." (A.R. at 17.) Thus, the ALJ stated that she took those considerations into account in her analysis. (*Id.*) Later, the ALJ again stated that, in formulating Plaintiff's RFC, she "account[ed] for his gout, osteoarthritis and obesity." (*Id.* at 20–21.) Of course, some courts have found similar statements to be mere boilerplate when unaccompanied by any analysis or discussion of the effects of the claimant's obesity on his other impairments. *See, e.g.*, *Haley v. Saul*, No. 3:20-CV-282 DRL, 2021 WL 3400804, at *5 (N.D. Ind. Aug. 4, 2021). *But see Mueller v. Astrue*, 860 F. Supp. 2d 615, 638 (N.D. Ill. 2012) (rejecting the claimant's contention that the ALJ did not consider her obesity in combination with her other impairments when the ALJ expressly stated that "in assessing limitations from claimant's various impairments, consideration was also given to her morbid obesity which can aggravate the symptoms and limitations from other impairments"). Here, the ALJ never discussed how and to what extent Plaintiff's obesity exacerbated his other conditions.

11

But to the extent the ALJ's discussion of Plaintiff's obesity is insufficient boilerplate, that does not, by itself, necessarily warrant remand. Rather, "a failure to explicitly consider the effects of obesity may be harmless error." *Prochaska v. Barnhart*, 454 F.3d 731, 737 (7th Cir. 2006). Courts often find harmless error where the claimant fails "to specify how his obesity further impaired his ability to work," *id.* (internal quotation marks omitted), particularly when his treating physicians are aware of the claimant's obesity but make no mention of how it exacerbates his other medical issues. *See, e.g.*, *Orienti v. Astrue*, 958 F. Supp. 2d 961, 983 (N.D. Ill. 2013); *Mueller*, 860 F. Supp. 2d at 637–38. Here, Plaintiff's medical records often note his obesity but never mention that it has limited him in any way. And while Plaintiff takes issue with the ALJ for failing to include a detailed discussion of how his obesity aggravates his other medical conditions, he similarly offers no explanation of what additional limitations he faces due to his obesity. Thus, any error the ALJ committed by not including a more fulsome analysis of Plaintiff's obesity is harmless.

Plaintiff also argues that the ALJ erred by failing to address favorable testimony from the vocational expert. He asserts that the ALJ's decision should have addressed the vocational expert's testimony that a hypothetical individual with Plaintiff's limitations would be precluded from competitive employment if that individual also had to be absent from work two days a month. Generally, an ALJ is required to pose hypotheticals to the vocational expert that incorporate all the claimant's limitations supported by the record. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010). But it is not automatically reversible error if an ALJ fails to address favorable vocational expert testimony. *Heuschmidt v. Colvin*, No. 14 C 4377, 2015 WL 7710368, at *9 (N.D. Ill. Nov. 30, 2015). Rather, the ALJ is not required to address a vocational expert's testimony as to a particular hypothetical when the ALJ determines that the hypothetical

12

does not accurately reflect the claimant's limitations. *Hodges v. Barnhart*, 509 F. Supp. 2d 726, 736 (N.D. Ill. 2007). Here, the ALJ acknowledged Plaintiff's testimony that he was unable to work when experiencing a gout flare. (A.R. at 18.) Nonetheless, in her assessment of Plaintiff's RFC, the ALJ did not include a limitation that Plaintiff would need to be absent from work twice a month, implicitly rejecting the basis for the hypothetical incorporating such a limitation. So long as her assessment was sound in that regard, there was no need for her to address the vocational expert's testimony regarding that hypothetical. *Hodges*, 509 F. Supp. 2d at 736. The soundness of the ALJ's exclusion of the two-absences-a-month limitation from Plaintiff's RFC relates to her determination that Plaintiff's subjective allegations regarding the intensity, persistence, and limiting effects of his symptoms was not consistent with the evidence in the record, an issue that will be discussed further below.

## II. Subjective Symptom Evaluation

According to Plaintiff, the ALJ's RFC assessment was undermined by her failure to properly credit Plaintiff's subjective allegations regarding his symptoms and their limiting effects. "An ALJ's credibility determination[3] may be overturned only if it is patently wrong." *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013). A court's review of an ALJ's subjective symptom evaluation simply examines whether it was "reasoned and supported." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). "It is only when the ALJ's determination lacks any explanation or

---

[3] Under SSR 16-3p, the ALJ is directed to consider all of the individual's statements about his symptoms and the extent to which the reported symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the individual's record. It supersedes SSR 96-7p to eliminate the use of the term "credibility." "The change in wording is meant to clarify that [ALJs] aren't in the business of impeaching claimants' character; obviously [ALJs] will continue to assess the credibility of pain ***assertions*** by applicants, especially as such assertions often cannot be credited or rejected on the basis of medical evidence." *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016). Further, the analysis under both SSR 16-3p and SSR 96-7p considers the same factors. *Miles v. Berryhill*, No. 17 C 676, 2018 WL 3608557, at *2 n.1 (N.D. Ill. July 27, 2018).

13

support that [a court] will declare it to be patently wrong and deserving of reversal." *Id.* at 413–14 (internal quotation marks and citation omitted).

While the ALJ recognized that Plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms, she found that his testimony concerning the intensity, persistence, and limiting effects of his symptoms was "not entirely consistent with the medical evidence and other evidence in the record." (A.R. at 18.) Plaintiff first asserts that the ALJ's finding that his testimony was "not entirely consistent" with the record demonstrates that she applied the wrong legal standard in evaluating his subjective allegations. The Seventh Circuit has harshly and repeatedly criticized the use of such "not entirely consistent" or related language as "meaningless boilerplate." *Stark v. Colvin*, 813 F.3d 684, 688 (7th Cir. 2016). Nonetheless, "no matter how unhelpful the language is, simply because the ALJ used boilerplate language does not automatically undermine or discredit the ALJ's ultimate conclusion if she otherwise points to information that justifies her credibility determination." *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014). Instead, use of the boilerplate "can be overlooked if the ALJ provides reasons for his credibility determination." *Haralson v. Colvin*, No. 12 C 7084, 2014 WL 2808983, at *6 (N.D. Ill. June 20, 2014). Here, the ALJ did not simply dismiss Plaintiff's testimony as "not entirely consistent" with the record but further discussed the reasons for her conclusion. Thus, her use of the "not entirely consistent" language, by itself, does not require remand.

In explaining her conclusion that Plaintiff's statements concerning his limitations were not supported by the record, the ALJ broadly discussed Plaintiff's subjective limitations and specifically cited evidence in the record that she concluded undermined his allegations. For instance, the ALJ found that Plaintiff's claim that his impairments made it difficult for him to use his hands in daily activities was undermined by a consultative exam showing that he had normal

14

grip strength and a normal ability to perform tasks involving fine and gross manipulation. Yet she also found some support for the claim from subsequent imaging showing degenerative changes in Plaintiff's right fingers. Considering Plaintiff's subjective allegations together with the record evidence, the ALJ determined that Plaintiff could only handle or finger on a frequent basis bilaterally. Similarly, in discussing Plaintiff's testimony that swelling in his knees and feet limited his ability to walk, the ALJ noted evidence showing mild edema in Plaintiff's lower extremities but also cited evidence showing that his impairments did not affect his ability to walk or the motor strength and sensation in his lower extremities. *Cf. Gretch v. Astrue*, 539 F.3d 473, 483 (7th Cir. 2008) (finding that the ALJ was not patently wrong to partially discount the claimant's testimony regarding his disabling gout given the medical reports documenting his normal range of motion, ability to walk and stand without significant limitation, and absence of joint swelling or other gout symptoms). While Plaintiff claims that the ALJ erred when she failed specifically to address why she did not credit certain of his subjective allegations of his limitations, "an ALJ's credibility findings need not specify which statements were not credible." *Shideler v. Astrue*, 688 F.3d 306, 312 (7th Cir. 2012); *see also Michelle G. v. Berryhill*, No. 18 C 408, 2019 WL 2368618, at *8 (N.D. Ill. June 3, 2019) ("[W]hen evaluating credibility, the ALJ is not required to identify particular statements that she found not credible. Rather, it is enough that the ALJ considered the entire record and supported her determination with specific reasons." (citation omitted)).

      Plaintiff further faults the ALJ for failing to explain if or how she considered that Plaintiff had been prescribed various medications to treat his impairments. SSR 16-3p directs an ALJ to consider the "type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms," among other things, in evaluating a claimant's subjective symptoms. To begin, there is limited evidence in the record concerning one of the

15

medications that Plaintiff asserts the ALJ failed to consider. Specifically, in the disability report he submitted in connection with the present application for benefits, Plaintiff reported taking Methylprednisolone for his gout. (A.R. at 234.) Yet, during his hearing before the ALJ, Plaintiff did not report taking Methylprednisolone. (*Id.* at 38–39.) And none of the medical records list that drug as one Plaintiff's prescribed medications. Another drug Plaintiff claims that the ALJ improperly failed to consider was Acetaminophen-Codeine. But that drug was prescribed only for pain relief following the drainage procedure for the abscess on Plaintiff's right hand. (A.R. at 38, 393); *see Britt v. Berryhill*, 889 F.3d 422, 426 (7th Cir. 2018) (finding that the ALJ did not err by failing to consider a medical recommendation that was simply a temporary measure). The remaining prescriptions are for Naproxen, a nonsteroidal anti-inflammatory drug (often sold under the brand name Aleve), and Allopurinol, which is used for gout.

As to Allopurinol, Plaintiff's prescription simply demonstrates that he has been diagnosed with gout and is consistent with the ALJ's determination that gout was one of Plaintiff's severe medically determinable impairments. But Plaintiff does not explain how any consideration of that medication would support his allegations concerning how gout limits his ability to work.[4] The record shows that Naproxen is the only pain reliever that Plaintiff consistently takes. But Naproxen is not a high-grade pain medication and Plaintiff's consistent use of the drug is fully consistent with the ALJ's conclusion that Plaintiff should be limited to light work. *Cf. Geer v. Berryhill*, 276 F. Supp. 3d 876, 887 (E.D. Wis. 2017) ("In some cases the resort to conservative treatment would warrant an inference that the underlying symptoms are not especially crippling, for example, if someone alleges crippling pain but takes only the occasional aspirin."). Thus, any

---

[4] Notably, Allopurinol is not a pain reliever. *See, e.g.*, *Allopurinol—Uses, Side Effects, and More*, WebMD, https://www.webmd.com/drugs/2/drug-8610/allopurinol-oral/details (last visited December 28, 2021) ("Allopurinol is not a pain reliever.").

discussion the ALJ might have included regarding Plaintiff's prescribed medications would only serve to reinforce her conclusion that Plaintiff's claimed limitations lacked sufficient support in the record. *See Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010) ("If it is predictable with great confidence that the agency will reinstate its decision on remand because the decision is overwhelmingly supported by the record though the agency's original opinion failed to marshal that support, then remanding is a waste of time.").

The Court finds that the ALJ's determination that Plaintiff's claimed limitations were not fully supported by the record was adequately reasoned and supported, and therefore was not patently wrong. *See Shideler*, 688 F.3d at 312 (acknowledging that "the ALJ's decision was not perfect" but nonetheless holding that because the ALJ adequately connected her adverse credibility determination to the record, any shortcomings in her decision did not warrant reversal). And because the ALJ's RFC assessment was supported by substantial evidence, her determination that Plaintiff is "not disabled" is affirmed.

## CONCLUSION

For the foregoing reasons, the ALJ's decision denying Plaintiff's application for disability insurance and supplemental security income is affirmed and the Commissioner's motion for summary judgment (Dkt. No. 19) is granted. The Clerk is directed to enter Judgment in favor of the Commissioner.

ENTERED:

Dated: December 28, 2021

_____
Andrea R. Wood
United States District Judge